## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EDWINA G. ROGERS,

                             Plaintiff,

        - vs -

SECULAR COALITION FOR AMERICA,
INC., *et al.*,

                        Defendants.

Case No. 1:15-cv-00767-CRC

## ROY SPECKHARDT'S MOTION TO
## DISMISS THE FIRST AMENDED COMPLAINT
## <u>FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED</u>

Roy Speckhardt, by counsel and pursuant to Fed. R. Civ. P. 12(b)(6), moves the Court for an Order dismissing Counts II, III and IV in the First Amended Complaint (Dkt. 5) for failure to state a claim upon which relief may be granted.

Count II in the First Amended Complaint (defamation) fails as a matter of law because Speckhardt's statement about Rogers' conduct was an opinion that is not verifiable, and thus cannot support a claim for defamation. Moreover, Speckhardt's opinion about Rogers' conduct was communicated only to members of the SCA Executive Committee, and thus is protected by the common interest privilege.

Count III in the First Amended Complaint (intentional interference with Rogers' employment contract) fails as a matter of law because Rogers' employment with SCA was at-will, and thus cannot support a claim for intentional interference with contract. Moreover, Speckhardt's opinion about Rogers' conduct does not demonstrate a "strong showing of intentional interference," as required in the District of Columbia.

Count IV in the First Amended Complaint (civil conspiracy) fails as a matter of law because Rogers has not pled a viable underlying tort against Speckhardt.  Moreover, because the Complaint does not plead facts plausibly showing an agreement among the individual defendants, the civil conspiracy claim fails for this additional reason.

In support of this motion, Speckhardt relies upon the attached Memorandum of Law.

Dated: July 28, 2015                                    Respectfully submitted,


*/s/ Leslie Paul Machado*
Leslie Paul Machado (Bar No. 472395)
LeClairRyan, a Professional Corporation
2318 Mill Road, Suite 600
Alexandria, Virginia 22310
(703) 647-5928 (phone)
(703) 647-5968 (facsimile)
leslie.machado@leclairryan.com

**Counsel for Roy Speckhardt**

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7(f), Roy Speckhardt, by counsel, respectfully requests that the Court hold an oral hearing on this motion.

*/s/ Leslie Paul Machado*
Leslie Paul Machado

16213379.1

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2015, I filed the foregoing with the Court via CM/ECF, which will serve all counsel of record.

/s/ Leslie Paul Machado
Leslie Paul Machado

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

EDWINA G. ROGERS,

                           Plaintiff,

           - vs -                                  Case No. 1:15-cv-00767-CRC

SECULAR COALITION FOR AMERICA,
INC., *et al.*,

                         Defendants.

**ROY SPECKHARDT'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Leslie Paul Machado (DC Bar No. 472395)
LeClairRyan, a Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia  22310
(703) 647-5928 (phone)
(703) 647-5968 (facsimile)
leslie.machado@leclairryan.com

***Counsel for Roy Speckhardt***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................iii

INTRODUCTION ...................................................................................................................... 1

FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT ................................................ 2

APPLICABLE STANDARD ....................................................................................................... 3

ARGUMENT ............................................................................................................................. 4

I.      COUNT II (DEFAMATION) FAILS TO STATE A CLAIM AGAINST
        SPECKHARDT BECAUSE IT IS BASED UPON OPINION AND,
        INDEPENDENTLY, IS PROTECTED BY THE COMMON INTEREST
        PRIVILEGE ................................................................................................................... 4

        A.      Speckhardt's "View" about Rogers' Emails to the Chairman of an SCA
                Member Organization and the SCA President Are Protected Opinion ................... 5

        B.      Speckhardt's Opinion to the SCA President and Executive Committee
                About Rogers' Conduct Is Protected by the Common Interest Privilege .............. 9

II.     COUNT III (INTENTIONAL INTERFERENCE WITH CONTRACT)
        FAILS TO STATE A CLAIM BECAUSE ROGERS' EMPLOYMENT
        WITH SCA WAS AT-WILL AND BECAUSE THERE ARE NO FACTS
        SHOWING INTENTIONAL INTERFERENCE BY SPECKHARDT ...................... 11

        A.      Rogers' Intentional Interference with Employment Contract Claim Fails
                As a Matter of Law Because Rogers Was an At-Will Employee with SCA .......... 12

        B.      The First Amended Complaint Pleads No Facts Showing That Speckhardt
                Engaged in "Intentional Procurement" of the Breach of Rogers' Alleged
                Employment Contract .................................................................................... 13

III.    COUNT IV (CIVIL CONSPIRACY) FAILS TO STATE A CLAIM BECAUSE
        THERE IS NO VIABLE UNDERLYING TORT AND BECAUSE THE
        FIRST AMENDED COMPLAINT DOES NOT PLEAD FACTS PLAUSIBLY
        SHOWING AN AGREEMENT AMONG THE INDIVIDUAL
        DEFENDANTS ............................................................................................................ 16

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

*Acosta Orellana v. Croplife Int'l,*
  711 F. Supp. 2d 81 (D.D.C. 2010) ................................................................................ 17, 18, 19

*Alade v. Borg-Warner Protective Servs. Corp.,*
  28 F. Supp. 2d 655 (D.D.C. 1998) ................................................................................ 11

*Am. Dental Ass'n v. Cigna Corp.,*
  605 F.3d 1283 (11th Cir. 2010) .................................................................................... 18

*Angel v. Levittown Union Free School Dist.,*
  171 A.D.2d 770 (2d Dep't 1991) .................................................................................. 9

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................................................... 17, 18, 19

*B&H Nat. Place, Inc. v. Beresford,*
  850 F. Supp. 2d 251 (D.D.C. 2008) .............................................................................. 16

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................................... 17, 18, 19

*Bell-Boston v. Manpower Int'l Staffing Agency,*
  2014 WL 3702953 (D.D.C. July 28, 2014) ................................................................... 10

*Brady v. Livingood,*
  360 F. Supp. 2d 94 (D.D.C. 2014) ................................................................................ 17

*Braun v. Ultimate Jetcharters, Inc.,*
  2013 WL 3873238 (N.D. Ohio July 25, 2013) ............................................................. 8

*Bush v. Butler,*
  521 F. Supp. 2d 63 (D.D.C. 2007) ................................................................................ 17

*Clemmons v. Academy for Educational Development,*
  2014 WL 4851739 (D.D.C. Sept. 30, 2014) ................................................................. 8

*Coles v. Wash. Free Weekly,*
  881 F. Supp. 26 (D.D.C. 1995) ..................................................................................... 3, 7

*Eastern Savings Bank, FSB v. Papageorge,*
  31 F. Supp. 3d 1 (D.D.C. 2014) .................................................................................... 12, 14

*Farah v. Esquire Magazine,*
    736 F.3d 528 (D.C. Cir. 2013) ................................................................................ 3, 4

*Gharib v. Wolf,*
    518 F. Supp. 2d 50 (D.D.C. 2007) ............................................................................. 13

*Glaze v. Marcus,*
    729 P.2d 342 (Ariz. Ct. App. 1986) ............................................................................ 9

*Hicklin v. McDonald,*
    2015 WL 3544449 (D.D.C. June 8, 2015) .................................................................... 5

*Livingston v. Agricultural Workers Mut. Auto Ins. Co.,*
    2014 WL 6850972 (N.D. Tex. Dec. 4, 2014) ............................................................... 8

*Maier v. Maretti,*
    671 A.2d 701 (Pa. Super. Ct. 1995) ........................................................................... 9

*Mar-Jac Poultry Inc. v. Katz,*
    773 F. Supp. 2d 103 (D.D.C. 2011) ........................................................................... 3

*Marshall v. Allison,*
    908 F. Supp. 2d 186 (D.D.C. 2009) .......................................................................... 11

*Mastro v. Potomac Elec. Power Co.,*
    447 F.3d 843 (D.C. Cir. 2006) ................................................................................. 10

*McCormack Baron Mgmt. Servs., Inc. v. American Guarantee & Liability Ins. Co.,*
    1998 WL 261154 (Mo. Ct. App. May 26, 1998) ........................................................... 9

*Mercer v. Inter-Con Security Systems, Inc.,*
    2015 WL 967759 (D.D.C. Mar. 4, 2015) ...................................................................... 3

*Metz v. BAE Systems Tech. Solutions & Servs., Inc.,*
    774 F.3d 18 (D.C. Cir. 2014) ............................................................................. 12, 13

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1 (1990) ................................................................................................. 4

*Millstein v. Henske,*
    772 A.2d 850 (D.C. 1999) ...................................................................................... 10

*Moss v. Stockard,*
    580 A.2d 1011 (D.C. 1990) ..................................................................................... 10

*Moy v. Howard Univ.*,
  861 F.2d 1290, 1988 WL 121022 (D.C. Cir. 1998) ...................................................13

*Nader v. Democratic Nat'l Committee*,
  567 F.3d 692 (D.C. Cir. 2009) ...................................................................................16

*Ning Ye v. Holder*,
  644 F. Supp. 2d 112 (D.D.C. 2009) ............................................................................4

*Rosen v. American Israel Public Affairs Committee, Inc.*,
  41 A.3d 1250 (D.C. 2012) ............................................................................................8

*Second Amendment Foundation v. United States Conference of Mayors*,
  274 F.3d 521 (D.C. Cir. 2001) ...................................................................................17

*Shirvinski v. United States Coast Guard*,
  673 F. 3d 308 (4th Cir. 2012) ....................................................................................14

*Slade v. Metropolitan Life Ins. Co.*,
  255 A.D.2d 130 (1st Dep't 1998) .................................................................................9

*Soliman v. George Washington Univ.*,
  658 F. Supp. 2d 98 (D.D.C. 2009) .............................................................................14

*Stoltz v. County of Lancaster*,
  2011 WL 815709 (E.D. Pa. Mar. 7, 2011) ..................................................................9

*Stovell v. James*,
  810 F. Supp. 2d 237 (D.D.C. 2011) .............................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................................18

*Turner v. Federal Express Corp.*,
  539 F. Supp. 2d 404 (D.D.C. 2008) ...........................................................................11

*Uzoukwu v. Metropolitan Washington Council of Governments*,
  983 F. Supp. 2d 67 (D.D.C. 2013) .............................................................................14

*Washington v. Smith*,
  80 F.3d 555 (D.C. Cir. 1996) .......................................................................................7

*Weyrich v. New Republic, Inc.*,
  235 F.3d 617 (D.C. Cir. 2001) ..................................................................................4, 7

## INTRODUCTION

Edwina Rogers was terminated by the Secular Coalition for America, Inc. ("SCA") for, among other things, sending rude, caustic and sarcastic email messages to the Chairman of the Harvard Humanist Community, which was an SCA member organization, and the SCA President.  She has now sued SCA and other defendants under a variety of theories.

One of the defendants is Roy Speckhardt, who was formally the treasurer of the SCA Education Fund.  According to the First Amended Complaint, after Speckhardt saw Rogers' email messages, he opined, to members of the SCA Executive Committee only, that he believed the email messages reflected "insubordination."  Because of that one observation, Rogers has asserted claims against Speckhardt for defamation, intentional interference with employment contract and civil conspiracy.  As shown below, these claims fail for a variety of reasons.

With respect to the defamation claim, the law is clear that Speckhardt's "insubordination" comment was an opinion that is not verifiable, and thus cannot support a claim for defamation.  Moreover, Speckhardt's opinion about Rogers' conduct was communicated only to members of the SCA Executive Committee, and thus is protected by the common interest privilege.

With respect to the claim that Speckhardt's opinion intentionally interfered with Rogers' employment contract, this claim fails as a matter of law because Rogers' employment with SCA was at-will, and thus cannot support a claim for intentional interference with contract. Moreover, Speckhardt's opinion about Rogers' conduct does not demonstrate a "strong showing of intentional interference," as required to state a viable claim in the District of Columbia.

Finally, with respect to the civil conspiracy claim, because Rogers has not pled a viable underlying tort against Speckhardt, this "follow-on" claim fails as a matter of law.  Moreover, because the First Amended Complaint does not plead facts plausibly showing an agreement among the individual defendants, the civil conspiracy claim fails for this additional reason.

## FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

Rogers was employed as SCA Executive Director from April 30, 2012 until June 2014. Dkt. 5 at ¶ 18.  Rogers alleges that her termination was precipitated by criticism from Amanda Metskas, the SCA President/Board Member, and Speckhardt, among others.  *Id.* at ¶¶ 38-39.

According to the First Amended Complaint, on some unspecified date, Metskas allegedly criticized Rogers' performance in an email message.  *Id.* at ¶ 38.  The First Amended Complaint alleges that Speckhardt replied to Metskas' email message and opined that Rogers' conduct constituted "insubordination":

> Speckhardt replied to Metskas' allegations by stating that Plaintiff's actions constituted "insubordination."  He also alleged, again without basis in fact, that Plaintiff was "insubordinate" to Gregory Langer, whom Speckhardt falsely claimed was an SCA Board member.  Speckhardt urged that Plaintiff be terminated on this basis.  Metskas and Speckhardt copied SCA Executive Committee Board members on these emails to prejudice them against Plaintiff without providing her any opportunity to counter these false and injurious accusations.

*Id.* at ¶ 39.  Rogers did not attach this email exchange to her First Amended Complaint.  *Id.*

According to the First Amended Complaint, on May 30, 2014, the SCA Board voted to terminate Rogers' employment.  *Id.* at ¶¶ 41-42.

The First Amended Complaint asserts three causes of action against Speckhardt: (a) defamation; (b) intentional interference with contract; and (c) civil conspiracy.  Dkt. 5 at ¶¶143-173.  It alleges that, when Speckhardt opined that Rogers' conduct constituted

"insubordination" in an email message to members of the SCA Executive Committee, that statement was false and defamatory, *id.* at ¶ 148, and constituted intentional interference with Rogers' alleged employment contract. *Id.* at ¶¶ 158-161. The First Amended Complaint also alleges that Speckhardt's opinion was part of a far-reaching conspiracy to oust Rogers from her position with SCA – one that continued past the filing of her lawsuit. *Id.* at ¶¶ 169-173.

## APPLICABLE STANDARD

"To overcome a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Mercer v. Inter-Con Security Systems, Inc.*, No. 14-cv-01368-CRC, 2015 WL 967759, at *2 (D.D.C. Mar. 4, 2015) (Cooper, J.) (citations omitted). "Facial plausibility entails 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citation omitted). "While the court 'must take all of the factual allegations in the complaint as true,' legal conclusions 'couched as a factual allegation' do not warrant the same deference." *Id.* (citation omitted).

Where, as here, the complaint includes a claim for defamation, "it is particularly appropriate for courts to scrutinize such actions at an early stage of the proceedings to determine whether dismissal is warranted" because of "the threat to the first amendment posed by nonmeritorious defamation actions." *Coles v. Wash. Free Weekly*, 881 F. Supp. 26, 30 (D.D.C. 1995). *See also Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) ("summary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails" (citation omitted)); *Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103, 111 (D.D.C. 2011) (holding that district courts should apply close judicial scrutiny and

properly dispose of defamation cases at an early juncture because of their threat to First Amendment freedoms).

**ARGUMENT**

## I.   COUNT II (DEFAMATION) FAILS TO STATE A CLAIM AGAINST SPECKHARDT BECAUSE IT IS BASED UPON OPINION AND, INDEPENDENTLY, IS PROTECTED BY THE COMMON INTEREST PRIVILEGE

"To meet the requirements for defamation under District of Columbia law, a plaintiff must prove (1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm." *Farah*, 736 F.3d at 533-34 (citations omitted). "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Id.* at 534 (citation omitted).

"For a statement to be actionable under the First Amendment, it must at a minimum express or imply a verifiably false fact about [the plaintiff]." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001) (citation omitted). Statements do not imply a provably false factual assertion, and thus cannot form the basis of a defamation action, if they cannot reasonably be interpreted as stating actual facts about an individual. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).

"In deciding whether a reasonable factfinder could conclude that a statement expressed or implied a verifiably false fact about [the plaintiff], the court must consider the statement in context." *Weyrich*, 235 F.3d at 624 (citation omitted). *See also Ning Ye v. Holder*, 644 F. Supp. 2d 112, 118 (D.D.C. 2009) ("the Court must 'examine the statement in its totality in the context in

which it was . . . published' and 'consider all the words used, not merely a particular phrase or

sentence'") (citation omitted; internal quotation marks omitted).

### A.    Speckhardt's "View" about Rogers' Emails to the Chairman of an SCA Member Organization and the SCA President Are Protected Opinion

The only allegedly defamatory statement that is expressly attributed to Speckhardt in

Count II is his "view" that Rogers' emails to the Chairman of an SCA member organization and

the SCA President constituted insubordination.  Dkt. 5 at ¶ 148.  When viewed in its entirety, as

required by law, it is clear that this "view" is not verifiable, and thus is non-actionable opinion.

Speckhardt's opinion was based upon an email string that began when a SCA staffer

(Sarah Levin) emailed a staffer at the Harvard Humanist Community (Jesse Galef), which was an

SCA member organization, about overlap between their two job functions.  Exhibit A.[1]  Galef

then forwarded the email to his boss: Greg Langer, Chairman of the Harvard Humanist

Community.  *Id.*

When Langer forwarded the email string to Rogers, explaining that he was "wondering

what it was all about," and asking to discuss it immediately, Rogers responded with a lengthy,

sarcastic and dismissive diatribe – to the Chairman of the Harvard Humanist Community, an

SCA member organization – which included the following statements:

- • "So you changed the name of your project from humanist to secular and now claim all things secular?"

---

[1]    Despite relying upon the email string in her First Amended Complaint, *see* Dkt. 5 at ¶¶ 38-39, Rogers did not attach the document to her pleading.  Her decision to omit the email from her filing, however, does not prevent the Court from reviewing it in deciding this motion to dismiss.  *See Hicklin v. McDonald*, No. 14-cv-01569-CRC, 2015 WL 3544449, at *2 (D.D.C. June 8, 2015) (Cooper, J.) ("The court generally cannot consider matters outside the pleadings in deciding a Rule 12(b)(6) motion, but it may consider 'documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss'" (citation omitted)).

- "Are you saying that you own this space and that you and the Harvard Humanist Community has all this covered?  Really?"

- "I have had enough small minded in fighting with the secular movement for this week.  Actually enough for a life time."

- "I wish you and the Harvard Humanist Community could do much more than you currently do on all fronts -- not less.  Too bad you do not seem to want the same for SCA and me."

Exhibit A.

Rogers then forwarded the email string to Metskas, the SCA President, with the following derisive message:

> Over to you boss lady.  Your new shit storm for this week.  I think if I sit back and do nothing then I would be a very successful member of the tribal secular community.  A couple of hill visits and a lobby day and call that a year of progress.  Should I rethink my desire and mission to build a strong and large secular community and get all other groups trying for the same goal?  Not a good month for such a mission to say the least.  Any advice or help is much appreciated.

Exhibit A.

It was this entire email string that Speckhardt then received, and which formed the basis for his opinion.  *Id.*  In his response, which was sent only to Metskas (SCA's President and Board Member), Patricia Guzikowski (SCA Executive Committee member), Bonnie Cousens (SCA Executive Committee member), and H. Alexander Satorie-Robinson (SCA Executive Committee member), Speckhardt offered his "view" that there was a lack of "consistent professionalism," a feeling that SCA was broken with Rogers at the helm and that the email message sent by Rogers to the Chairman of an SCA member institution (Langer), as well as the email message sent by Rogers to the SCA President (Metskas), constituted a record of insubordination.  *Id.*

Speckhardt's "view" about Rogers' conduct is protected opinion.  Unlike statements of fact, which are provably false, there is no way for the Court to determine whether Rogers had, in fact, engaged in insubordination, as defined and interpreted by Speckhardt.  While Speckhardt concluded that Rogers' email to the Chairman of an SCA member organization (in which she mocked his work and views and questioned his involvement), and Rogers' email message to the SCA President (in which she sarcastically suggested she should reduce her workload to appease members), constituted a "record of insubordination," Rogers apparently disagrees with that view.  But there is no way to determine whether Speckhardt's statement is provably false because one person's opinion of "insubordination" is different from another person's opinion of the same conduct.

For this reason, District of Columbia courts have routinely held that similar statements are not actionable because they are not provably false.  *See, e.g., Weyrich*, 235 F.3d at 624 (affirming Rule 12(b)(6) dismissal and holding that statement that plaintiff "began to suffer bouts of pessimism and paranoia" was not actionable because it did not assert a provable fact); *Washington v. Smith*, 80 F.3d 555, 556-557 (D.C. Cir. 1996) (statement that basketball coach "usually finds a way to screw things up" held to be non-actionable where it was "open to different interpretations by reasonable persons"); *Coles v. Wash. Free Weekly, Inc.* 881 F. Supp. 26, 32 (D.D.C. 1995), *aff'd* 88 F.3d 1278 (D.C. Cir. 1996) (statements describing a lawyer's arguments as "vague, confusing and incomplete" are "genuine opinion" because they "are not capable of being proven true or false" and because "[r]easonable people could differ as to [the argument's] quality and thoroughness"); *Stovell v. James*, 810 F. Supp. 2d 237, 249 (D.D.C. 2011) (statement allegedly made by LeBron James that "I want to be a better father than mine was" was "not based on objectively verifiable facts" and was therefore protected expression of

-7-

opinion); *Rosen v. American Israel Public Affairs Committee, Inc.*, 41 A.3d 1250, 1258 (D.C. 2012) (statement that former employee's behavior did not comport with employer's expected standards was not provably false because it was a general subjective term capable of multiple meanings).

Just last year, the Court held that a similar statement by a defendant about a former employee was protected opinion. *Clemmons v. Academy for Educational Development*, No. 10-cv-0911-RC, 2014 WL 4851739 (D.D.C. Sept. 30, 2014). There, the Court held that a statement, by the defendant's employee, that the plaintiff's leadership led to "management problems" "merely expresses her subjective opinion, and under District of Columbia law, opinion statements that lend themselves to varying interpretations are insufficient for a defamation claim because they cannot be proved 'false.'" *Id.* at *19 (multiple citations omitted).[2]

While our research did not identify any District of Columbia decisions resolving whether a statement that a person's conduct constitutes "insubordination" is a protected opinion, courts around the country have regularly held that such statements are not provably false, and thus cannot form the basis for a defamation claim. *See, e.g., Livingston v. Agricultural Workers Mut. Auto Ins. Co.*, No. 4:14-cv-624-A, 2014 WL 6850972, at *4 (N.D. Tex. Dec. 4, 2014) (granting motion to dismiss defamation claim because defendant's statement that plaintiff had been "guilty of severe insubordination" was a "mere expression of opinion"); *Braun v. Ultimate Jetcharters, Inc.*, No. 5:12-cv-01635, 2013 WL 3873238, at *21 (N.D. Ohio July 25, 2013) (comments that plaintiff was "unprofessional," "insubordinate," "wild," "inappropriate on the road," and "drank

---

[2]    The *Clemmons* court noted that other allegedly defamatory statements about the plaintiff, including that she was "problematic," was "difficult" to work with, was "not a team player," tended to "cry racism when things are not going her way," and was "hard on Ghanaian staff," also likely constituted opinions that were not actionable for defamation under District of Columbia law. 2014 WL 4851739, at *18 and n.12.

too much" held to be opinions and not statements of fact that can support a defamation claim); *Stoltz v. County of Lancaster*, No. 08-cv-5622, 2011 WL 815709, at *17 (E.D. Pa. Mar. 7, 2011) (allegedly false statement that plaintiff was insubordinate held insufficient to support claim for defamation); *Slade v. Metropolitan Life Ins. Co.*, 255 A.D.2d 130, 131 (1st Dep't 1998) (affirming dismissal of complaint because statement that plaintiff was terminated for insubordination was "protected expression of opinion"); *McCormack Baron Mgmt. Servs., Inc. v. American Guarantee & Liability Ins. Co.*, No. 72846, 1998 WL 261154, at *5 (Mo. Ct. App. May 26, 1998) ("We find insured's statement that security guard's letter constituted insubordination to be an opinion, rather than a statement of fact"); *Angel v. Levittown Union Free School Dist. No. 5*, 171 A.D.2d 770, 773 (2d Dep't 1991) ("Sirois's statement that the plaintiff's behavior at a meeting was insubordinate constituted an opinion protected by the First Amendment and is not actionable"); *Glaze v. Marcus*, 729 P.2d 342, 344 (Ariz. Ct. App. 1986) (defendant's statement that plaintiff's conduct was "unprofessional, insubordinate or abusive" held to be non-actionable "pure opinion"). *See also cf. Maier v. Maretti*, 671 A.2d 701, 704 (Pa. Super. Ct. 1995) (statement implying that plaintiff was vulgar, crude and grossly insubordinate and indicating that plaintiff was intemperate, lacked integrity and self-control was not capable of defamatory meaning).

Because Speckhardt's "view" about Rogers' email messages was not provably false, it cannot support a claim for defamation. As a result, Count II should be dismissed as to Speckhardt.

### B. Speckhardt's Opinion to the SCA President and Executive Committee About Rogers' Conduct Is Protected by the Common Interest Privilege

Even if Speckhardt's "view" about Rogers' conduct was not protected opinion, which it was, Rogers' defamation claim still fails because Speckhardt's statement was limited to those with a common interest in his opinion.

"The common interest privilege protects otherwise defamatory statements made '(1) . . . in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest.'" *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006) (citation omitted). "Such a privilege may be found in circumstances where an individual's professional qualifications are discussed." *Bell-Boston v. Manpower Int'l Staffing Agency*, No. 14-cv-0194-ABJ, 2014 WL 3702953, at *2 (D.D.C. July 28, 2014) (citations omitted). Whether a statement is privileged is a question of law for the Court. *Id.* (citation omitted). The plaintiff bears the burden of proving that the privilege does not apply, and a defendant is presumed to have acted in good faith. *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990).

"The privilege is an important one because, 'if its protection were not given, true information that should be given or received would not be communicated because of fear of the persons capable of giving it that they would be held liable in an action of defamation if their statements were untrue." *Millstein v. Henske*, 722 A.2d 850, 856 (D.C. 1999) (applying the common interest privilege to protect statements that were made in an appraisal of the work of a university employee and that were passed on to university officials).

This case amply demonstrates why the common interest privilege exists to bar certain defamation claims as a matter of law. Speckhardt, the SCA Education Fund Treasurer as well as the Executive Director of the American Humanist Association (an SCA member organization), and Board Member for the Institute for Humanist Studies (another SCA member organization), was forwarded acerbic messages from SCA's Executive Director (Rogers) to SCA's President (Metskas) and the Chairman of a member institution (Langer). Speckhardt provided his "view"

to the SCA Executive Committee about Rogers' conduct, so that they were aware of his opinion in deciding how to respond to Rogers' conduct.

Imposing liability here would stifle candid observations about the conduct of employees, including leaders of organizations, with the result being a chilling effect on speech.  For this reason, District of Columbia courts have routinely held that similar communications, even if they later turn out to be false, are protected by the common interest privilege.  *See, e.g., Alade v. Borg-Warner Protective Servs. Corp.*, 28 F. Supp. 2d 655, 657 (D.D.C. 1998) (manager's statements to employees that the plaintiffs were discharged for violating company's sexual harassment policy were protected by common interest privilege); *Turner v. Federal Express Corp.*, 539 F. Supp. 2d 404, 408 (D.D.C. 2008) (granting motion to dismiss defamation claim, based upon statements made by defendant/employees about plaintiff, because of common interest privilege); *Marshall v. Allison*, 908 F. Supp. 2d 186, 201 (D.D.C. 2009) (discussions among defendant's employees that plaintiff (outside vendor) might be receiving kickbacks held protected by common interest privilege because the "conversation was only among three individuals with common interests on matters within their common interest").  Consequently, even if Speckhardt's "view" about Rogers was not protected opinion, which it was, because the statement was protected under the common interest privilege, the Court should grant Speckhardt's motion to dismiss Count II in the First Amended Complaint with prejudice.

## II.   COUNT III (INTENTIONAL INTERFERENCE WITH CONTRACT) FAILS TO STATE A CLAIM BECAUSE ROGERS' EMPLOYMENT WITH SCA WAS AT-WILL AND BECAUSE THERE ARE NO FACTS SHOWING INTENTIONAL INTERFERENCE BY SPECKHARDT

"Under D.C. law, to prove tortious interference with contract, the plaintiff must establish (1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach.

*Eastern Savings Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 18 (D.D.C. 2014) (citations omitted). "Moreover, a defendant's interference 'must be improper.'" *Id.* (citation omitted).

Rogers' claim that Speckhardt intentionally interfered with her employment contract fails for two independent reasons. First, Rogers' at-will employment relationship cannot support a claim for intentional interference with contract. Second, the First Amended Complaint pleads no facts showing that Speckhardt intentionally procured the contract's breach, as required to state a viable claim.

### A. Rogers' Intentional Interference with Employment Contract Claim Fails As a Matter of Law Because Rogers Was an At-Will Employee with SCA

The "rule in the District of Columbia is that an at-will employment agreement cannot form the basis of a claim of tortious interference with contractual relations." *Metz v. BAE Systems Tech. Solutions & Servs., Inc.*, 774 F.3d 18, 23 (D.C. Cir. 2014) (citations omitted). While Rogers alleges that "SCA and Plaintiff agreed she would continue in the position of Executive Director for a minimum of five years," Dkt. 5 at ¶ 19, she has not provided an employment agreement supporting this allegation. *Id.* As such, it appears that Rogers is attempting to argue that she had an oral contract to serve as SCA's Executive Director "for a minimum of five years." *Id.* However, such a contract would violate the Statute of Frauds.

D.C. Code § 28-3502 provides that "[a]n action may not be brought . . . upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged therewith or a person authorized by him." Where, as here, a plaintiff alleges an employment agreement for a defined period that is longer than one year, but does not produce any writing in support, the alleged oral contract violates the Statute of Frauds.

Thus, in *Moy v. Howard Univ.*, 861 F.2d 1290, 1988 WL 121022 (D.C. Cir. 1988), the plaintiff alleged that Howard University breached a contract when it did not employ him from June 11, 1984 to July 31, 1985. *Moy*, 1998 WL 121022, at *1. The court held that, because the employment contract was for a defined period of performance that was longer than one year, the plaintiff's failure to produce a written agreement doomed his claim. *Id.* Similarly, in *Gharib v. Wolf*, 518 F. Supp. 2d 50 (D.D.C. 2007), the plaintiff alleged that the defendants breached an oral employment agreement for a fixed term of 10 years. *Id.* at 54. The Court held that this alleged employment agreement for a fixed term in excess of one year was "subject to dismissal based upon the statute of frauds." *Id.*

Here, Rogers is appearing to allege that she had an oral employment agreement with SCA wherein she "would continue in the position of Executive Director for a minimum of five years." Dkt. 5 at ¶ 19. Rogers' defined employment agreement, for a period longer than one year, is thus subject to the Statute of Frauds. Because Rogers has not offered any writing in support of her alleged employment agreement, it fails as a matter of law. Consequently, because Rogers was an at-will employee at all times,[3] and a claim for intentional interference with employment contract cannot be based upon an at-will relationship, *see Metz*, 774 F.3d at 23, Count III fails to state a claim against Speckhardt as a matter of law.

**B.    The First Amended Complaint Pleads No Facts Showing That Speckhardt Engaged in "Intentional Procurement" of the Breach of Rogers' Alleged Employment Contract**

Even if Rogers could establish that she had a viable employment contract, Count III nevertheless fails to state a claim because the First Amended Complaint pleads no facts showing

---

[3]    Indeed, as SCA's brief shows, Rogers' employment with SCA was always at-will, as reflected by SCA's offer letter and confirmed by SCA's Employee Handbook. Dkt. 7 at 2-3

that Speckhardt engaged in "intentional procurement" of the breach of Rogers' alleged employment contract.

To avoid dismissal, Rogers must plead facts showing that Speckhardt intentionally procured the breach of her employment contract by "improper means." *Papageorge*, 31 F. Supp. 3d at 18.  "'[A] general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability.'" *Soliman v. George Washington Univ.*, 658 F. Supp. 2d 98, 103 (D.D.C. 2009) (citations omitted).  Rather, to avoid dismissal, a "strong showing of intentional interference" is required in the District of Columbia.  *Id.* at 104.

In *Soliman*, the plaintiff alleged that the individual defendants "damaged her professional reputation, in order to drive her out of her job, by telling 'other physicians that [she] was incompetent,' and constantly questioning her judgment in front of her colleagues, residents and other hospital staff."  *Id.*  The Court granted a motion to dismiss, holding that these comments, even if made maliciously, did not show that they "were made with the specific intent to interfere with her employment."  *Id.*  *See also Uzoukwu v. Metropolitan Washington Council of Governments*, 983 F. Supp. 2d 67, 97 (D.D.C. 2013) ("Plaintiff alleges that Keller's involvement in the 'false and fabricated' referral to counseling interfered with Plaintiff's continued employment at COG. . . . These allegations are not sufficient to establish that Keller intentionally procured a breach of Plaintiff's employment contract.  As such, this claim will be dismissed with prejudice" (citation omitted)); *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 322 (4th Cir. 2012) (holding that similar claim based upon allegedly defamatory comment about work performance was properly dismissed because "[w]hile Shirvinski may be frustrated over his coworkers' conclusion, that does not give him the right to hold them liable in tort.  This cause of action provides redress for acts akin to 'violence, threats or intimidation, bribery or unfounded litigation,' not the ordinary

interpersonal conflicts of the workplace.  The workplace is rife with personal conflicts, turf fights, misunderstandings and disagreements, and the courts cannot be expected to sort through them all").

The facts here are even weaker than in *Soliman*.  There, the defendants made repeated comments about the plaintiff that caused her to lose her job; here, Speckhardt offered a single opinion after reviewing two sarcastic email messages.  If the multiple comments in *Soliman*, including that the plaintiff was "incompetent," were insufficient to show a specific intent to interfere with employment, then Speckhardt's single opinion is clearly not a "strong showing of intentional interference" as required in the District of Columbia.

Rogers might argue that, in her First Amended Complaint, she alleges that "Speckhardt urged that Plaintiff be terminated" in his email message.  Dkt. 5 at ¶ 39.  This allegation is false. The actual email message shows that Speckhardt was *not* urging the termination of Rogers' employment contract.

> DC is a hire/fire at will state, but I believe that a record of insubordination (against a new board member and to you as well) like that which exists in this thread is immediate cause for dismissal *if the decision is made to proceed in that fashion.*  I may be missing facts and chains of events, *so I hesitate to outright recommend such a step*, but it seems appropriate to at least have it on the table.

Exhibit A (emphasis added).

The actual email message thus shows exactly the opposite of what Rogers alleged in the First Amended Complaint.  Rather than urging Rogers' termination, Speckhardt made it clear that he was not making that decision, and was hesitant to recommend such a step.  *Id.*  It is not clear how, given this record evidence, Rogers could allege, *under penalty of perjury,* that Speckhardt was urging her termination.  In any event, because there are no facts showing that Speckhardt's single opinion about Rogers' conduct was made with the specific intent to intentionally procure

-15-

the termination of her alleged employment agreement, Count III fails to state a claim against Speckhardt.

### III.   COUNT IV (CIVIL CONSPIRACY) FAILS TO STATE A CLAIM BECAUSE THERE IS NO VIABLE UNDERLYING TORT AND BECAUSE THE FIRST AMENDED COMPLAINT DOES NOT PLEAD FACTS PLAUSIBLY SHOWING AN AGREEMENT AMONG THE INDIVIDUAL DEFENDANTS

Finally, Rogers' civil conspiracy claim (Count IV) fails as a matter of law because: (1) Rogers has not alleged a viable underlying tort; and (2) Rogers has not alleged facts plausibly showing an agreement among the individual defendants.

Initially, "'[c]ivil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort.'" *Nader v. Democratic Nat'l Committee*, 567 F.3d 692, 697 (D.C. Cir. 2009) (citation omitted). "A claim for civil conspiracy thus fails unless the elements of the underlying tort are satisfied." *Id.* (citation omitted). Here, as shown above, the underlying torts asserted against Speckhardt (defamation and intentional interference with employment contract) fail to state a claim as a matter of law. That means that the civil conspiracy claim also fails as a matter of law. *B&H Nat. Place, Inc. v. Beresford*, 850 F. Supp. 2d 251, 262 (D.D.C. 2008) ("Therefore, without an underlying tort, this civil conspiracy claim also fails" (citation omitted)).

Even if that were not the case, Rogers' civil conspiracy claim nevertheless fails to state a claim because it does not plead facts plausibly showing an agreement among the individual defendants. "In the District of Columbia, civil conspiracy has four elements: '(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common

scheme.'"  *Second Amendment Foundation v. United States Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (citation omitted).

"The question of whether a conspiracy theory has been adequately pled often turns on the existence of an agreement, which is the 'essential element of a conspiracy claim. . .'".  *Acosta Orellana v. Croplife Int'l*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010) (citation omitted).  "[I]n pleading that a defendant entered into an agreement the 'plaintiff must set forth more than just conclusory allegations of the agreement. . . .'"  *Id.* (citation omitted).  *See also Bush v. Butler*, 521 F. Supp. 2d 63, 68-69 (D.D.C. 2007) (holding that, where "plaintiff merely concludes that there was an agreement among the defendants," he "has failed to plead sufficient facts from which the Court could infer the existence of a conspiracy between the defendants"); *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2014) (dismissing civil conspiracy claim where complaint did not allege facts showing an agreement between the defendants).

Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

It is not enough that factual allegations make an inference of liability merely "conceivable" or "possibl[e]."  *Iqbal*, 556 U.S. at 678, 680.  Nor is it enough that the allegations be "consistent with" such an inference; the factual allegations must demonstrate that such an inference is "plausible."  *Twombly*, 550 U.S. at 556-57.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" *Iqbal*, 556 U.S. at 679;

Fed. R. Civ. Proc. 8(a)(2), and must be dismissed. *Id.* at 678. ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief"'" and must be dismissed for failing to state a claim).

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task." *Id.* at 679. In making its determination, a court must consider whether factual allegations, even if consistent with nefarious acts, might also be "compatible with," or "more likely explained," by lawful behavior. *Id.* at 680; *cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) ("The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts?"); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) ("courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer" (quoting *Iqbal*, 556 U.S. at 682)).

At the end, "[u]nder *Twombly*, a plaintiff asserting liability conspiracy is required to plead more than mere 'parallel conduct that could just as well be independent action,' but must make allegations 'placed in a context that raise[] a suggestion of a preceding agreement . . .'". *Acosta Orellana*, 711 F. Supp. 2d at 114 (quoting *Twombly*, 550 U.S. at 557). Thus, in *Acosta Orellana*, the complaint alleged that there was a civil conspiracy among the defendants, but failed to provide any factual support for the alleged agreement. While the complaint highlighted various actions of the defendants, and alleged that these actions were undertaken in concert, the Court held that this did not show an agreement among the defendants:

> the plaintiffs provide virtually no factual support that even tends
> to support the existence of an agreement between the CropLife

> Defendants and any other person or entity.  In fact, on the basis of what is alleged in the amended complaint, the actions of the CropLife Defendants, even assuming that those allegations are true, could just as easily be the result of their independent actions.

*Acosta Orellana*, 711 F. Supp. 2d at 114 (citation omitted).

The same is true here.  While the First Amended Complaint alleges that Speckhardt and Metskas "agreed to work together," Dkt. 5 at ¶ 37, the only factual support for this allegation, made *"upon information and belief,"* is that Metskas sent an email message in May 2014, to which Speckhardt replied with his "view."  *Id.* at ¶¶ 38-39.  Then, the First Amended Complaint alleges, three months later, Langer separately sent various email messages to Rogers, the SCA Board and others about Rogers and her conduct.  *Id.* at ¶¶ 74-77.  Then, the First Amended Complaint alleges, ten months later, Dawkins urged others to disassociate themselves from Rogers' new endeavor. *Id.* at ¶ 125.

Nothing in the First Amended Complaint shows any agreement among Metskas, Speckhardt, Langer and Dawkins.  Rather, even assuming that the allegations are true, they "could just as easily be the result of their independent actions."  Where, as here, the First Amended Complaint "pleads facts that are 'merely consistent with' a defendant's liability," Rogers has not demonstrated, as she must, a conclusion that is *more plausible* than the innocent inference that the emails were the result of independent actions.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief"'" (quoting *Twombly*, 550 U.S. at 557)).  For this additional reason, the civil conspiracy claim fails as a matter of law.

## **CONCLUSION**

Rogers' defamation claim must be dismissed because Speckhardt's "view" about Rogers' conduct was pure opinion that is not verifiable, and thus cannot support a claim for defamation, and because it is protected by the common interest privilege.  Rogers' intentional interference with employment contract claim fails as a matter of law because her employment relationship with SCA was always at-will and because there are no facts showing that Speckhardt intentionally intended to procure the termination of Rogers' employment relationship when he offered his opinion about her conduct.  Finally, Rogers' civil conspiracy claim fails because there is no underlying tort and because there are no facts that plausibly show an agreement among the individual defendants.  For all of these reasons, the claims in the First Amended Complaint against Speckhardt should be dismissed with prejudice and without leave to replead.

Dated: July 28, 2015                                   Respectfully submitted,


                                                       _/s/ Leslie Paul Machado_____
                                                       Leslie Paul Machado (Bar No. 472395)
                                                       LeClairRyan, a Professional Corporation
                                                       2318 Mill Road, Suite 600
                                                       Alexandria, Virginia 22310
                                                       (703) 647-5928 (phone)
                                                       (703) 647-5968 (facsimile)
                                                       leslie.machado@leclairryan.com

                                                       ***Counsel for Roy Speckhardt***

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7(f), Roy Speckhardt, by counsel, respectfully requests that the Court hold an oral hearing on this motion.

_/s/ Leslie Paul Machado_
Leslie Paul Machado

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 28, 2015, I filed the foregoing with the Court via CM/ECF, which will serve all counsel of record.

<u>/s/ Leslie Paul Machado</u><br>
Leslie Paul Machado