**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EDWINA G. ROGERS,

                                    Plaintiff,

                - vs -                                        Case No. 1:15-cv-00767-CRC

SECULAR COALITION FOR AMERICA,
INC., *et al.*,

                                    Defendants.

**ROY SPECKHARDT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**
**FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Edwina Rogers ("Rogers"), the former Executive Director of the Secular Coalition for America, Inc. ("SCA"), has sued Roy Speckhardt ("Speckhardt") because, after he reviewed sarcastic, mocking and inflammatory email messages Rogers sent to the leader of an SCA member organization and the SCA President, he opined that her conduct showed a record of "insubordination." Rogers alleges that this single statement was false and defamatory, constitutes intentional interference with her SCA employment contract and was part of a wide-ranging civil conspiracy.

In his Opening Brief, Speckhardt showed that his "insubordination" comment was an opinion that is not provably false, and thus cannot support a claim for defamation and, independently, that it was communicated only to members of the SCA Executive Committee, and is thus protected by the common interest privilege. Dkt. 8 at 4-11. Speckhardt next showed that the intentional interference with contract claim failed as a matter of law because Rogers' employment with SCA was at-will and, independently, because the First Amended Complaint

did not plead any facts showing that Speckhardt engaged in "intentional procurement" of the breach of Rogers' alleged employment contract, as required to state a viable claim in the District of Columbia. *Id.* at 11-16. Finally, Speckhardt showed that the civil conspiracy claim failed because the First Amended Complaint did not plead facts plausibly showing an agreement among the individual defendants. *Id.* at 16-19.

Rogers' opposition brief generally ignores the many authorities and arguments in Speckhardt's Opening Brief. Rogers instead makes legally incorrect arguments, mischaracterizes her own complaint, and relies upon inapposite cases. Rogers' opposition brief confirms that she cannot plead a viable claim against Speckhardt and that the claims against him should be dismissed with prejudice.

## ARGUMENT

## I. COUNT II (DEFAMATION) FAILS TO STATE A CLAIM AGAINST SPECKHARDT BECAUSE IT IS BASED UPON OPINION AND, INDEPENDENTLY, IS PROTECTED BY THE COMMON INTEREST PRIVILEGE

In his Opening Brief, Speckhardt showed that the defamation claim failed as a matter of law because Speckhardt's "view" about Rogers' incendiary email messages to the leader of an SCA member organization and SCA's president is protected opinion. Dkt. 8 at 5-9. Speckhardt cited cases in the District of Columbia holding that similar opinions are not provably false, and thus cannot support a claim for defamation. *Id.* at 7-8 (citations omitted). Speckhardt also cited numerous cases expressly holding that a statement that somebody was insubordinate was "a mere expression of opinion," a "protected expression of opinion," "an opinion, rather than a statement of fact," "an opinion protected by the First Amendment," and "pure opinion." *Id.* at 8-9 (citations omitted).

Rogers' opposition brief reflects a fundamental misunderstanding of libel law.  Rogers first argues that Speckhardt is not entitled to First Amendment protections because "[h]e is not a journalist" and because he "is not defending political discourse or criticism of a public figure." Dkt. 20 at 1.  *See also id.* at 7 (arguing that some of the decisions cited by Speckhardt are "not on point" because they "involved press opinion on matters of public concern").  But the First Amendment applies to all citizens.  Regardless of whether Speckhardt's statement was made as a journalist or as a private citizen, it is not actionable if, as here, it is protected opinion.

Next, in response to the many cases cited by Speckhardt holding that a statement of insubordination is protected opinion, and thus not actionable, Rogers argues that courts in other jurisdictions have held that a defamation claim can be based on a statement that a plaintiff was insubordinate.  Dkt. 20 at 8.  But these cases are inapposite because, in none of the four decisions did the court address whether a statement of insubordination was protected opinion; rather, in each of the cases, the courts addressed only other aspects of defamation law.[1]

Thus, in *Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W.2d 876 (Minn. 1986), the court never analyzed, or even considered, whether the employer's statement that the plaintiffs had been fired for "gross insubordination" constituted opinion.  Instead, the court focused on whether the plaintiffs' need to explain the reason for their termination satisfied the

---

[1]   In response to Speckhardt's showing that his "insubordination" statement is protected opinion, Rogers' opposition brief claims that "Speckhardt's liability does not . . . arise out of a 'single word.'  Instead, his liability arises out of a series of defamatory statements made between May 23 and 24, 2014."  Dkt. 20 at 5.  The only statement in the First Amended Complaint that is expressly attributed to Speckhardt, however, is the "insubordination" statement.  Dkt. 5 at ¶¶ 39, 148.  And Rogers' recitation of Speckhardt's allegedly defamatory statements in her opposition brief refers back only to the one "insubordination" statement.  Dkt. 20 at 5-6 (citing only Dkt. 20-4).  Rogers' assertion that Speckhardt made a "series of defamatory statements" is thus contradicted by her own verified complaint and by the emails Rogers attached to her opposition brief.

"publication" element of defamation, whether the statement was true and whether the statement was privileged. *Id.* at 886-90.

Similarly, in *Wilk v. Abbott Terrace Health Ctr., Inc.*, No. CV065001328S, 2007 WL 2482486, at *8-9 (Conn. Super. Ct. Aug. 15, 2007) and *Chase v. Weight*, No. 87-cv-570-FR, 1988 WL 107051, at *3 (D. Or. Oct. 12, 1988), the courts focused only on whether the "publication" element of defamation was satisfied by the inclusion of the statement in the plaintiffs' personnel file and/or whether it was privileged. Finally, in *McAulay v. Maloff*, 369 N.Y.S.2d 946, 947 (NY Cty. Sup. Ct. 1975), the only question was whether a report by a principal to a school district superintendent about a teacher was entitled to an absolute or qualified privilege. Like the other cases, *McAulay* never addressed whether the insubordination statement was opinion.

The briefing thus shows that: (a) numerous District of Columbia cases cited by Speckhardt hold that a statement is protected opinion where it cannot be proven false, as here; (b) numerous cases cited by Speckhardt have expressly held that "insubordinate" statements are protected opinion; and (c) none of the cases cited by Rogers address whether an "insubordinate" statement is protected opinion. Because "under District of Columbia law, opinion statements that lend themselves to varying interpretations are insufficient for a defamation claim because they cannot be proved 'false,'" *Clemmons v. Acad. for Educ. Dev.*, No. 10-cv-0911-RC, 2014 WL 4851739, at *19 (D.D.C. Sept. 30, 2014) (multiple citations omitted) (statement that the plaintiff's leadership led to "management problems" was a protected opinion), and there is no way to determine if Speckhardt's "view" that Rogers' conduct constitutes "insubordination" is provably false, it is protected opinion that cannot support a claim for defamation.

Speckhardt's Opening Brief demonstrated that Speckhardt's opinion about Rogers' conduct was also protected by the common interest privilege. Dkt. 8 at 9-11. Speckhardt

explained that he offered his opinion about Rogers' conduct only to the SCA Executive Committee so that they were aware of his opinion in formulating a response strategy. *Id.* Speckhardt showed that the common interest privilege exists for just this reason: to allow candid communications about the performance of an organization's employee. *Id.*

Rogers offers no serious response to these arguments. Instead, she claims only that, because Speckhardt was not a member of the SCA Board, and only the SCA Board had the authority to terminate her employment, his opinion about her conduct is somehow outside the scope of the common interest privilege. Dkt. 20 at 9-10. This non-sequitur completely misses the point. The common interest privilege applies if the person offering the opinion about the employee's performance or conduct has an interest, or believes he has an interest, in making the observation. *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006) (citation omitted). It does not require the speaker to have hire/fire authority. Otherwise, no employee could comment about another employee without being exposed to liability. Clearly that is not the case.

At the time he opined about Rogers' conduct, Speckhardt was the Treasurer of the SCA Education Fund ("SCAEF"). Dkt. 5 at ¶ 16. Rogers states that she "served as Executive Director for SCAEF." Dkt. 21 at 2. Speckhardt certainly had an interest in providing his opinion about Rogers' conduct because, as this Court has often observed, the common interest privilege "may be found in circumstances where an individual's professional qualifications are discussed." *Bell-Boston v. Manpower Int'l Staffing Agency*, No. 14-cv-0194-ABJ, 2014 WL 3702953, at *2 (D.D.C. July 28, 2014) (citations omitted). Because Speckhardt's "view" about Rogers's conduct was protected under the common interest privilege, even if the Court finds that

Speckhardt's "insubordination" statement was not protected opinion, it should grant Speckhardt's motion to dismiss Count II in the First Amended Complaint with prejudice.

Rogers argues, however, that the common interest privilege is overcome because Speckhardt made the statement in bad faith and with malice.  Dkt. 20 at 11-12.  In deciding if Rogers has pled facts sufficient to overcome the common interest privilege, the Court first examines the statement for malice, considering whether it is "so excessive, intemperate, unreasonable, and abusive as to forbid any other reasonable conclusion that the defendant was actuated by express malice. . . ."  *Novecon Ltd. v. Bulgarian-American Enterprise Fund*, 190 F.3d 556, 567 (D.C. Cir. 1999) (citations omitted).

In *Novecon*, the DC Circuit held that, while the defendant might have been "harsh and intemperate" in describing a lawsuit as an attempt to "extort $200,000 of U.S. taxpayer money" from the defendant and as "a veritable Brooklyn Bridge of misrepresentations," the statement did not, on its face, show that the defendant was motivated only by express malice.  *Id.* at 567.

The email message that contained Speckhardt's opinion about Rogers' conduct is significantly tamer than the statements in *Novecon*.  In it, Speckhardt explained that he was simply offering his "view" about Rogers' conduct and performance; that the ultimate decision rested with the members of the SCA Executive Committee; and that Speckhardt "hesitate[d] to outright recommend" termination.  Dkt. 8-1 at 1.  If the excessive statements in *Novecon* were held to be incapable of malice on their face, then Speckhardt's nuanced view falls far short.

Because Speckhardt's email message does not show only that he was motivated by express malice, Rogers must plead facts that show malice to avoid dismissal.  *See Novecon*, 190 F.3d at 567 (malice must otherwise be shown by extrinsic evidence); *Mattiaccio v. DHA Group, Inc.*, No. 12-cv-1249-CKK, 2015 WL 1546351, at *11 (D.D.C. Apr. 6, 2015) (plaintiff must

"'make '[a] substantial proffer' of evidence of malice in order 'to meet this demanding standard'" (citations omitted)). Rogers claims that she has satisfied this "demanding standard" because she "alleges Speckhardt made the allegedly defamatory statements in order to protect himself from criticism arising out of the embezzlement occurring on his watch." Dkt. 20 at 11.

The law is clear, however, that the common interest privilege prevails even if the defendant made the statement in furtherance of a financial or proprietary gain or personal interest. *Caudle v. Thomason*, 992 F. Supp. 1, 5 (D.D.C. 1997). And, "'if the language of the communication and the circumstances attending its publication by the defendant are as consistent with the non-existence of malice as with its existence, there is no issue for the jury, and it is the duty of the trial court to direct a verdict for the defendant.'" *Armenian Assembly of America, Inc. v. Cafesjian*, 692 F. Supp. 2d 20, 51 (D.D.C. 2010) (citation omitted).

That is the case here. The tone, tenor and language of Speckhardt's email message was measured and restrained: Speckhardt explained that Rogers' historic conduct was something he could "live with," but that her recent conduct caused him to wonder if "the coalition nature of this organization is broken with [Rogers] at the helm." Dkt. 8-1 at 1. Speckhardt made it clear that the ultimate decision regarding Rogers' future lay with others, and he emphasized that he was not recommending her termination ("so I hesitate to outright recommend such a step, but it seems appropriate to at least have it on the table"). *Id.* Speckhardt limited dissemination of his "view" to members of the SCA Executive Committee only, instead of the entire SCA Board or SCA membership. Nothing in the language of Speckhardt's email message, or the circumstances surrounding its publication, show malice. In fact, they show exactly the opposite.

Thus, while Rogers speculates that Speckhardt must have been motivated by his own nefarious goals at the time he offered his "view" about her conduct, because she has not alleged

any facts showing that Speckhardt's *only* purpose in sending the email message was his malice, she has not made a "substantial proffer" of evidence of malice sufficient "to meet this demanding standard." Said another way, because the language of the communication and the circumstances attending its publication are as consistent with the non-existence of malice as with its existence, the Court should grant Speckhardt's motion to dismiss based upon the common interest privilege. *See, e.g., Turner v. Federal Express Corp.*, 539 F. Supp. 2d 404, 409 (D.D.C. 2008) (granting motion to dismiss defamation claim based upon common interest privilege where plaintiff did not plead facts showing that the challenged statement was published with malice).

## II. COUNT III (INTENTIONAL INTERFERENCE WITH CONTRACT) FAILS TO STATE A CLAIM BECAUSE ROGERS' EMPLOYMENT WITH SCA WAS AT-WILL AND BECAUSE THERE ARE NO FACTS SHOWING INTENTIONAL INTERFERENCE BY SPECKHARDT

In his Opening Brief, Speckhardt showed that the tortious interference with employment claim failed as a matter of law because: (a) Rogers' at-will employment relationship cannot support a claim for intentional interference with contract; and (b) independently, the First Amended Complaint pleads no facts showing that Speckhardt intentionally procured the contract's breach, as required to state a viable claim. Dkt. 8 at 11-16.

In response, Rogers concedes that, just last year, the DC Circuit held that an-will employment relationship cannot support a claim for tortious interference. Dkt. 20 at 13 (citing *Metz v. BAE Systems Tech. Solutions & Servs., Inc.*, 774 F.3d 18 (D.C. Cir. 2014)). Rogers argues, however, that "this case is not controlled by <u>Metz</u>" because that decision "elevates logic over common sense," "elevates form over substance" and "is based on faulty logic." *Id.* at 12 n.8, 13,

14.   With all due respect for Rogers' personal opinion about the DC Circuit's decision, it controls here.[2]

Tacitly acknowledging this, Rogers next argues that her employment relationship with SCA was not at-will.  Dkt. 20 at 14.  However, in the First Amended Complaint, Rogers alleges that she agreed to be bound by the SCA Handbook.  Dkt. 5 at ¶ 21.  That handbook, which Rogers appended to her opposition brief, confirms that Rogers' employment was always at-will. Dkt. 24-4 at 7 ("Unless you have a separate, written employment agreement that states otherwise, employment with the Secular Coalition of America is on an <u>at will basis</u>" (underlining in original)).  Moreover, Rogers' letter agreement with SCA, which Rogers also appended to her opposition brief, specifically states that: "The Secular Coalition of America is an employer at will and continuation of employment is not guaranteed for a specific length of time . . .".  Dkt. 20-1. Rogers' continued assertion that she was not an at-will employee is thus contradicted by the very

---

[2]   Rogers argues that the Court should ignore *Metz* and instead follow *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989), where, according to Rogers, the court allowed a jury to determine if the defendant interfered with her at-will employment.  Dkt. 20 at 14.  As the DC Circuit noted in *Metz*, however, the *Sorrells* court never addressed whether the at-will nature of the agreement precluded the tortious interference claim.  *Metz*, 774 F.3d at 23.  As the *Metz* court noted, when the DC Court of Appeals was directly confronted with the question of whether an at-will relationship could support a claim for tortious interference, however, it directly and unequivocally held that it could not.  *Id.* (citations omitted).  Indeed, even before *Metz*, courts have routinely found that *Sorrells* is not a correct statement of DC law on this topic.  *See, e.g., Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 24 (D.D.C. 2002) ("*Sorrells,* which simply did not address the issue, does not provide sufficient support for the plaintiff's claim.  In light of the plain language of *McManus, Bible Way,* and *Dale,* the Court concludes that Riggs's claim for tortious interference with contract must be dismissed"); *Mattiaccio v. DHA Group*, 20 F. Supp. 2d 220, 229 (D.D.C. 2014) ("The law in the District of Columbia is that a tortious interference claim cannot be predicated on an at-will employment relationship" (citations omitted)). With *Metz*, the issue is closed.

documents she has submitted to the Court, and upon which she bases her claim.[3]  Because the

facts show that Rogers' employment with SCA was always at-will, the tortious interference with

the contract claim against Speckhardt fails on this basis alone.  *See Metz*, 774 F.3d at 23 (the "rule

in the District of Columbia is that an at-will employment agreement cannot form the basis of a

claim of tortious interference with contractual relations" (citations omitted)).

Speckhardt's Opening Brief showed that, even if Rogers could establish that she was not

an at-will employee, Count III nevertheless fails to state a claim because the First Amended

Complaint pleads no facts showing that Speckhardt engaged in "intentional procurement" of the

breach of Rogers' alleged employment contract.  Dkt. 8 at 13-16.  Speckhardt showed that, to

avoid dismissal, Rogers must plead facts showing that Speckhardt intentionally procured the

breach of her employment contract by "improper means."  *Eastern Savings Bank, FSB v.*

*Papageorge*, 31 F. Supp. 3d 1, 18 (D.D.C. 2014) (citation omitted).  Speckhardt showed that "'a

general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings

is insufficient to impose liability.'"  *Soliman v. George Washington Univ.*, 658 F. Supp. 2d 98, 103

(D.D.C. 2009) (citations omitted).  Rather, to avoid dismissal, a "strong showing of intentional

interference" is required in the District of Columbia.  *Soliman*, 658 F. Supp. 2d at 104.  *See also*

*Kreuzer v. George Washington Univ.*, 896 A.2d 238, 248 (D.C. 2006) (affirming dismissal of

intentional interference claim because the plaintiff's "conclusory allegations" did not show the

defendant "intended to harm him" as required to "meet the demanding test for liability under

---

[3]     Rogers claims that, notwithstanding numerous documents confirming that her employment
was always at-will, she allegedly had oral discussions with SCA, before she began her
employment, which changed the terms of her employment from at-will to a five-year term.
Dkt. 20 at 14-18.   Other than Rogers' self-serving affidavit, there are no documents
supporting this alleged oral understanding.   Moreover, as both Speckhardt and SCA
previously showed, such an oral agreement would violate the Statute of Frauds.

this cause of action"); *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (D.C. law requires a plaintiff claiming tortious interference with contract to plead facts showing the "defendant's intentional procurement of the contract's breach" (citation omitted)).

Rogers acknowledges, as she must, "that a 'general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability,'" and that, "[i]nstead, a plaintiff must make a 'strong showing of intent'" to cause a breach of the employment contract. Dkt. 20 at 19 (citing *Bennett Enterprises, Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995)). The very decision she cites, however, shows that she has not come close to making a "strong showing of intent" that Speckhardt caused SCA to breach its alleged employment contract with Rogers.

In *Domino's*, the DC Circuit held that the trial court erred in awarding damages based upon an intentional interference theory of liability because the facts did not show a strong intent to interfere by the defendant:

> Bennett has established at most that Domino's, through the legitimate disclosure of truthful information in the ordinary course of business, contributed to Bennett's failure to sell its troubled enterprise for as high a price as it wished. Nothing in the evidence supports more than the rankest speculation that Domino's or anyone acting on its behalf harbored any ill motive or intent to disrupt Bennett's economic advantage. Because the claim was not made out as a matter of law, the jury's verdict must be reversed.

*Id.* at 499.

Similarly, in *Soliman*, the Court dismissed a claim for tortious interference with contract, finding that, even if the defendants maliciously "'damaged [the plaintiff's] professional reputation, in order to drive her out of her job, by telling 'other physicians that [she] was incompetent,' and constantly questioning her judgment in front of her colleagues, residents and

other hospital staff,'" these comments did not show that they "were made with the specific intent to interfere with her employment." *Id.* at 104 (citation omitted).

The record here is similarly devoid of any *facts* supporting an inference that Speckhardt intentionally procured the breach of Rogers' alleged employment contract by improper means.[4] Speckhardt did not terminate Rogers.  Speckhardt did not recommend that SCA terminate Rogers.  Speckhardt did not argue that SCA must terminate Rogers.  Speckhardt did not force SCA to terminate Rogers.  Speckhardt did not compel Rogers' termination.  Instead, he simply offered his opinion about her conduct.  While Rogers advances wild theories about Speckhardt's supposed motivations in offering his opinion, they are as baseless as the "rankest speculation" found insufficient in *Domino's* and *Soliman.*  Although Speckhardt's opinion might have been considered by the SCA Board in reaching its decision to terminate Rogers' employment, "'knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability.'" *Rodriguez v. Laboratory Corp. of America Holdings,* 13 F. Supp. 3d 121, 134 (D.D.C. 2014) (granting motion to dismiss an intentional interference with contract claim).

At the end, Rogers' argument is that, when Speckhardt offered his "view" about Rogers' conduct, based upon his review of her mocking email messages to the leader of an SCA member

---

[4]     In a strained effort to avoid dismissal, Rogers' opposition brief claims that Speckhardt "urged that she be terminated."  Dkt. 20 at 18.  This is incorrect.  In the email message, Speckhardt made clear that he "hesitate[d] to outright recommend such a step." Dkt. 8-1 at 1.  Next, while Rogers argues that Speckhardt "insinuated himself directly into a series of communications among SCA's Board Members," (Dkt. 20 at 18-19), the actual email chain shows that Speckhardt was copied on the email string, and simply replied to the same recipients.  Dkt. 8-1.  And while Rogers argues that Speckhardt "urged that 'immediate' dismissal be 'kept on the table,'" (Dkt. 20 at 18-19), the actual email string shows otherwise. Dkt. 8-1.  Finally, while Rogers argues that "Speckhardt or Metskas deliberately leaked the Board's decision to assure Plaintiff's immediate dismissal," Dkt. 20 at 19, there are no facts supporting this allegation and, in any event, the alleged leak came after the termination decision was made by the SCA Board, so it could not have been intended to cause the termination of Rogers' employment relationship with SCA.

organization and the SCA President; and when he stated in his "view" that he "hesitate[d] to outright recommend" termination; and when he stated that the decision belonged to the SCA Board, Speckhardt was actually intending to cause the termination of Rogers' employment with SCA. Other than Rogers' "rankest speculation" and "conclusory allegations," there are no facts supporting this theory, which fails as a matter of law. *See Kreuzer*, 896 A.2d at 248 (affirming dismissal of intentional interference claim because the plaintiff's "conclusory allegations" did not show the defendant "intended to harm him" as required to "meet the demanding test for liability under this cause of action").

## III.   COUNT IV (CIVIL CONSPIRACY) FAILS TO STATE A CLAIM BECAUSE THERE IS NO VIABLE UNDERLYING TORT AND BECAUSE THE FIRST AMENDED COMPLAINT DOES NOT PLEAD FACTS PLAUSIBLY SHOWING AN AGREEMENT AMONG THE INDIVIDUAL DEFENDANTS

Finally, Speckhardt's Opening Brief showed that the civil conspiracy claim (Count IV) fails as a matter of law because Rogers has not alleged facts plausibly showing an agreement among the individual defendants.[5]

Speckhardt cited numerous District of Columbia civil conspiracy cases holding that, to survive a motion to dismiss, a plaintiff must plead facts showing "the existence of an agreement, which is the 'essential element of a conspiracy claim,'" and that, "in pleading that a defendant entered into an agreement the 'plaintiff must set forth more than just conclusory allegations of [the] agreement. . . .'" *Acosta Orellana v. Croplife Int'l*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010) (citations omitted). Speckhardt showed that, "[u]nder *Twombly*, a plaintiff asserting conspiracy liability is required to plead more than mere 'parallel conduct that could just as well be

---

[5]   Speckhardt also moved to dismiss the civil conspiracy claim on the basis that there was no underlying tort. Dkt. 8 at 16. Rogers does not offer any substantive response to this point. Dkt. 20 at 20.

independent action,' but must make allegations 'placed in a context that raise[] a suggestion of a preceding agreement . . .". *Acosta Orellana*, 711 F. Supp. 2d at 114 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Speckhardt showed that the First Amended Complaint pled no facts showing any agreement among the defendants. Speckhardt showed that, while the First Amended Complaint alleges that Speckhardt and Metskas "agreed to work together," Dkt. 5 at ¶ 37, the only factual support for this allegation is that Metskas sent an email message in May 2014, to which Speckhardt replied with his "view." *Id.* at ¶¶ 38-39. Then, the First Amended Complaint alleges, three months later, Langer separately sent various email messages to Rogers, the SCA Board and others about Rogers and her conduct. *Id.* at ¶¶ 74-77. Then, the First Amended Complaint alleges, ten months later, Dawkins urged others to disassociate themselves from Rogers' new project. *Id.* at ¶ 125.

Speckhardt's Opening Brief showed that nothing in the First Amended Complaint plausibly shows any agreement among Metskas, Speckhardt, Langer and Dawkins. Rather, even assuming that the allegations are true, they "could just as easily be the result of their independent actions." Dkt. 8-1 at 18-19. Speckhardt showed that, where, as here, the First Amended Complaint "pleads facts that are 'merely consistent with' a defendant's liability," Rogers has not demonstrated, as she must, a conclusion that is *more plausible* than the innocent inference that the emails were the result of independent actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

short of the line between possibility and plausibility of "entitlement to relief"'" (quoting *Twombly*, 550 U.S. at 557)).[6]

Rogers' opposition brief does not respond to any of the civil conspiracy decisions cited by Speckhardt.  Instead, she relies upon two inapposite cases: *U.S. ex. rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871 (D.C. Cir. 2010), which involved the False Claims Act, and *Oxbow, Carbon & Minerals LLC v. Union Pacific R.R. Co.*, 81 F. Supp. 3d 1 (D.D.C. 2015), which alleged an antitrust conspiracy.  But Rogers' claim is for civil conspiracy – not a claim under the False Claims Act or antitrust conspiracy.  Her reliance upon *Miller* and *Oxbow* is thus misplaced.[7]

More on point is this Court's recent decision in *Harvey v. Kasco*, No. 1:14-cv-01571-CRC, 2015 WL 3777362 (D.D.C. June 17, 2015) (Cooper, J.), where the Court granted a motion to

---

[6]   Because she is not able to plead facts showing the existence of any agreement, Rogers resorts to mischaracterizing the facts, as pled in her own complaint.  Thus, while Rogers' opposition brief argues that Speckhardt and Metskas were sharing a residence during the time they allegedly conspired against her, Dkt. 20 at 21, the First Amended Complaint actually pleads that, *after* Rogers was terminated, Metskas moved to the District to assume leadership at SCA and, during this interim period of time, lived in Speckhardt's house.  Dkt. 5 at ¶ 35.

Similarly, while Rogers' now argues that "Speckhardt or Metskas leaked Plaintiff's termination to the New York Times," *id.* at n.7, or that "Speckhardt or Metskas deliberately leaked the Board's decision," *id.* at 19, or that "Speckhardt is the most likely source of the leak to the New York Times," *id.* at n.11, or that "[t]here is no plausible source of the leak **other than** Speckhardt and/or Metskas," *id.* at 22 (bold in original), the First Amended Complaint alleges only that *somebody* leaked the information to the New York Times.  *See* Dkt. 5 at ¶ 45 ("upon information and belief Metskas and/or Speckhardt leaked, or caused to be leaked, Plaintiff's termination to the *New York Times*").  More troubling than Rogers' mischaracterizing her own Complaint is her concession that *she has no facts that Speckhardt leaked anything to the New York Times.  See* Dkt. 20 at n.7 ("Without the opportunity for discovery, Plaintiff cannot determine whether Metskas or Speckhardt was the source of the leak"); *id.* at 11 ("Until she has an opportunity for discovery, Plaintiff cannot conclusively determine whether Speckhardt or Metskas was behind the leak").   While Rogers' mischaracterization of the facts in her opposition brief is understandable, given her inability to plead facts supporting a viable claim, it should not be countenanced by the Court.

[7]   The *Miller* decision did not address what allegations are sufficient to plead a cognizable civil conspiracy claim.  It is not clear why Rogers believes the decision is relevant here.

dismiss a claim for civil conspiracy because the complaint failed to plead specific facts showing a civil conspiracy and instead relied only on speculation and conclusory allegations. The complaint there alleged that, after the plaintiff was allegedly assaulted by a police officer, he was falsely arrested and booked as part of a conspiracy to cover up the unjustified use of force. The plaintiff alleged that the US Attorney's subsequent decision not to pursue charges supported his conspiracy claim.

This Court disagreed, holding that "[u]nder *Twombly* and *Iqbal's* more demanding pleading standards, the plaintiff must include sufficient factual content in his complaint to 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at *3 (citations omitted). It held that the plaintiff's failure to satisfy this basic pleading requirement required dismissal of his claim. *Id.*

The same is true here. Rogers' rests her entire civil conspiracy claim upon the fact that Speckhardt offered his opinion about her conduct in his May 24, 2014 email message. That single communication, Rogers alleges, was part of a vast conspiracy that included Speckhardt, Metskas, Langer, Dawkins and others. Conspicuously missing from the First Amended Complaint, however, are any *facts* that would support an agreement among Speckhardt, Metskas, Langer, Dawkins and others to conspire against Rogers. While Rogers makes unsupported allegations about the supposed motivations of these individual defendants, she has not alleged any *facts* plausibly showing an agreement. Rather, as Speckhardt showed in his opening brief, the email messages could be the result of independent actions.

The Court's decision in *Oxbow*, upon which Rogers relies heavily (Dkt. 20 at 20-22), actually supports Speckhardt because it emphasizes the deficiencies in Rogers' pleading. In *Oxbow*, the court addressed whether a complaint contained factual allegations that adequately

supported an antitrust conspiracy.  In holding that the complaint survived the motion to dismiss,

the *Oxbow* court noted that it alleged specific facts showing that the defendants used to

vigorously compete with each other, but that, after an agreement was allegedly reached, they

stopped competing with each other, stopped offering competing bids and allowed the other

defendants to raise prices without competition.  81 F. Supp. 2d at 11.  These specific factual

allegations, the *Oxbow* court held, were sufficient to avoid dismissal.  *Id.*

The First Amended Complaint here contains no such allegations; rather, the civil

conspiracy claim relies entirely on conclusory allegations and speculations.  As Speckhardt

showed in his Opening Brief, Rogers' civil conspiracy claim knits together various discrete

events (Speckhardt's opinion about Rogers' conduct; Langer's emails to Rogers following her

termination; Langer's mid-2015 emails) and asks the Court to conclude that they were all part of

a concerted effort.  But the law demands much more.

In fact, the *Oxbow* court specifically held that, where there are no facts, circumstantial or

otherwise, to render the alleged conspiracy plausible, the plaintiff must eliminate the possibility

of independent action to survive a motion to dismiss.  *Oxbow*, 81 F. Supp. 2d at 13 (citing

*Twombly*, 550 U.S. at 566).  Indeed, in *Twombly*, the Court noted that:

> [L]awful parallel conduct fails to bespeak unlawful agreement.  It
> makes sense to say, therefore, that an allegation of parallel conduct
> and a bare assertion of conspiracy will not suffice.  Without more,
> parallel conduct does not suggest conspiracy, and a conclusory
> allegation of agreement at some unspecified point does not supply
> facts sufficient to show illegality.

*Twombly*, 550 U.S. at 556-57.  Speckhardt's Opening Brief similarly showed that, where a plaintiff

asserts a civil conspiracy claim, but the alleged conduct could also be the result of independent

actions, it fails to state a claim.  Dkt. 8 at 18-19 (citing *Acosta Orellana*, 711 F. Supp. 2d at 114

(granting motion to dismiss civil conspiracy claim because "the actions of the CropLife

-17-

Defendants, even assuming that those allegations are true, could just as easily be the result of their independent actions")).

"Dismissal under Rule 12(b)(6) is proper when a plaintiff has failed to plead 'enough facts to state a claim to relief that is plausible on its face' and to nudge his claims 'across the line from conceivable to plausible.'" *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555. Here, Rogers' civil conspiracy claim relies entirely upon one email opinion sent by Speckhardt. Because Rogers has not: (a) alleged facts plausibly showing a conspiracy; and (b) eliminated the possibility of independent action, her civil conspiracy claim fails as a matter of law.[8]

---

[8] Rogers repeatedly claims that, if she is simply allowed to conduct discovery, she will be able to establish facts supporting the essential elements of a viable claim. Dkt 20 at 2, 3 n.3, 4, 6 n.4, 10 n.7, 14, 16, 18, 19 n.11, 22, and 22 n.12. The law is clear, however, that a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678. Rogers' failure to plead facts supporting her claims does not mean that she is allowed discovery in hopes of being able to discover information that can resuscitate her causes of action. It instead requires that the Court dismiss her complaint. *See, e.g., Felder v. WMATA*, No. 14-cv-01905-TFH, 2015 WL 2447342, at *5 (D.D.C. May 21, 2015) (rejecting plaintiff's argument that he should be entitled to discovery that might support his claim and instead holding that because "the plaintiff alleged no facts to suggest, beyond the plaintiff's own speculation, that WMATA had policies and procedures in place related to employee training, the Court is constrained to find that the Complaint fails to state a claim to relief that is plausible on its face").

Moreover, Rogers' plea for discovery ignores that, prior to filing this lawsuit, Rogers subpoenaed documents from SCA related to the termination of her employment, and was allowed to take the deposition of an SCA corporate designee regarding the termination of her employment. Rogers is thus in a far different – and better – position than the "typical" plaintiff. Her inability to plead facts showing the essential elements of a viable cause of action, despite having access to pre-suit discovery, confirms that she does not have a viable claim against Speckhardt.

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in Speckhardt's Opening Brief, the claims in the First Amended Complaint against Speckhardt should be dismissed with prejudice.

Dated: September 29, 2015                           Respectfully submitted,


                                                    _/s/ Leslie Paul Machado_____
                                                    Leslie Paul Machado (Bar No. 472395)
                                                    LeClairRyan, a Professional Corporation
                                                    2318 Mill Road, Suite 600
                                                    Alexandria, Virginia 22310
                                                    (703) 647-5928 (phone)
                                                    (703) 647-5968 (facsimile)
                                                    leslie.machado@leclairryan.com

                                                    **_Counsel for Roy Speckhardt_**

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2015, I filed the foregoing with the Court via CM/ECF, which will serve all counsel of record.

/s/ Leslie Paul Machado
Leslie Paul Machado