UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**EDWINA C. ROGERS,**

      **Plaintiff,**

  v.

**SECULAR COALITION FOR AMERICA, INC., et al.**

      **Defendants.**

_____/

Case No. 1:15-CV-00767-CRC

## PLAINTIFF'S OPPOSITION TO GREG R. LANGER'S MOTION TO DISMISS

Plaintiff Edwina Rogers submits this memorandum in opposition to Defendant Greg R. Langer's Motion to Dismiss the First Amended Complaint ("Motion"). (Dkt. 31).

### PRELIMINARY STATEMENT

Langer's participation in a conspiracy with co-defendants Amanda Metskas, Roy Speckhardt, and others to cause defendant Secular Coalition for America ("SCA") to unlawfully terminate and defame Plaintiff, and his knowledge that substantial acts in furtherance of the conspiracy necessarily would be committed in the District of Columbia, subject him to the jurisdiction of this Honorable Court.

Langer provided the false allegations of unauthorized conduct and "insubordination" which Metskas and Speckhardt used to compel SCA's Board to terminate Plaintiff in breach of her employment agreement. When SCA members who were shocked by the termination of its highly successful Executive Director demanded an explanation, Langer agreed to pub-

licly discredit Plaintiff with false statements and innuendo. His statements are *per se* defamatory. Langer, who apparently is an attorney, acknowledges that "talking about a labor matter" could expose him to a lawsuit and he knew acts in furtherance of the conspiracy would be taken in the District. (Exs. 2, 3).

Therefore, for this Court to exercise personal jurisdiction over Langer is permissible under the District's long-arm statute and does not offend due process. At a minimum, Plaintiff has alleged sufficient facts to entitle her to jurisdictional discovery from Langer.

### STATEMENT OF FACTS

In 2012, Plaintiff agreed to serve as SCA's Executive Director in the District of Columbia for a term of at least five years. (Verified First Amended Complaint ("FAC"), Dkt 3, at ¶¶ 18, 19). Langer was the Chairman of the Board of the Harvard Humanist Chaplaincy, an SCA member organization. (Dkt. 31-2 at ¶ 3). Langer directed "enduring personal attacks" at Plaintiff due to her political affiliation. (Rogers Decl., Dkt. 24-2, at ¶ 43). Langer, Speckhardt, and Metskas entered into a conspiracy to cause her termination. (FAC at ¶¶ 35-55). Langer provided the spurious basis for her termination by claiming she had diverted funds from a Harvard Humanist project without SCA Board approval. (Dkt. 24-2 at ¶¶ 39-44).

Metskas then set Plaintiff's termination in motion with an email containing false statements. (FAC at ¶ 38; Dkt. 24-7; Dkt. 24-2 at ¶ 44). Speckhardt, who is not a member of SCA's Board or its executive committee and had no legitimate voice in Plaintiff's employment, confirmed Metskas' false statements in several emails of his own, falsely accused Plaintiff of being insubordinate to Langer and Mestkas, and called for her termination. (FAC at ¶ 39; Dkt. 24-7 at 7). Speckhardt's unsolicited, self-serving email was outside of normal channels, regarding a matter on which he had no authority, and was sent in bad faith. Metskas replied to Speckhardt's

email, agreeing Plaintiff should be terminated. (FAC at ¶ 40; Dkt. 24-7 at 7). These emails triggered immediate action by the Board, which voted to terminate Plaintiff "without cause." (FAC at ¶ 42; Dkt. 24-8). Although the Board voted to give Plaintiff time to resign in order to protect her reputation, one of the conspirators or a member of the Board (the only people who knew about the termination), quickly leaked it to the *New York Times*. (FAC at ¶¶ 45-46).

Given Plaintiff's objectively superior performance as SCA's Executive Director, (FAC at ¶¶ 24-33), her sudden termination caused an outcry among SCA's members and donors demanding an explanation. (*Id.* at ¶ 85; Ex. 2 at 4). Unable, or unwilling, to offer any legitimate response, the conspirators instead defamed Plaintiff. Upon information and belief, SCA's legal counsel issued a "gag order" to SCA Board members and officers directing that they not publicly comment on Plaintiff's termination. (FAC at ¶ 71). Because he was not subject to the "gag order," Langer publicly discredited Plaintiff and damaged her reputation. (FAC at ¶ 72; Ex. 1).

Langer communicated with SCA members and donors and (a) exaggerated his own importance and credentials, (b) made false and disparaging statements regarding Plaintiff, (c) attempted to generate support and corroboration for his false and disparaging statements, (d) attacked individuals who supported Plaintiff, and (e) attacked individuals who contradicted his false and disparaging statements regarding Plaintiff. (FAC at ¶ 73). For example:

- On August 21, 2014, Langer wrote the following to Plaintiff, copying the entire SCA Board and dozens of secular leaders: "Your life appears to be a mass of problems, confrontation and disharmony and could not be more inapposite to mine. I will not allow your toxicity, anger and frustration to occupy any more of my time. You and yours are now like shit on my shoe; I keep trying to scrape it off but bits remain. I'm buying new shoes. Please, go away. – Greg." (FAC at ¶ 74).

-3-

- On August 24, 2014, Langer falsely alleged to the SCA Board, donors and secular leaders, that Plaintiff had "pimped" for secular leaders Richard Dawkins and Sean Faircloth. Mr. Langer wrote: "… [Plaintiff] told me that a regular part of her job when bringing Richard (and Sean) on tours, etc., was to make sure there were pretty young women seated next to them and **available**." (FAC at ¶ 75; emphasis added). **As Langer himself admits, [t]he implication was unmistakable…"** (*Id.*) Dawkins later characterized Langer's statement as a "total and utter lie." (*Id.* at ¶ 76).

Langer's and the other defendants' pattern of publicly attacking Plaintiff and her supporters with false statements was repeated several times. In each case the effect was to further the conspiracy against and injure Plaintiff. (FAC at ¶¶ 78, 79).

## ARGUMENT

Langer's participation in a conspiracy to interfere with Plaintiff's employment agreement in the District of Columbia subjects him to the jurisdiction of this Court.

### Applicable law

When the sufficiency of her complaint is challenged by a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. ("Rule") 12(b)(2), Plaintiff need only make a *prima facie* showing of sufficient jurisdictional facts. Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 523-24 (D.C. Cir. 2001). As with other Rule 12 motions, Plaintiff's factual allegations must be presumed true and liberally construed in her favor. United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 121 (D.D.C. 2000).

In order to obtain personal jurisdiction over Langer, this Court must engage in a two part inquiry: (1) does Langer's conduct fall within the scope of the District's long arm statute, and (2) would exercising jurisdiction over Langer offend due process? Rule 4(k)(1)(A); GTE

New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C.Cir. 2000) (citing United States v. Ferrara, 54 F.3d 825, 828 (D.C.Cir.1995)).

The District's long arm statute extends jurisdiction over any person who "acts directly or by an agent" as to claims arising out of the person's:

> (3) causing a tortious injury in the District of Columbia by an act or omission in the District of Columbia,

D.C. Code § 13-423 (a)(3) (2001). Since Plaintiff relies on conspiracy jurisdiction to satisfy section (a)(3) of the long-arm statute (*i.e.*, that Langer acted "by an agent"), she must make a *prima facie* showing of a conspiracy involving Langer. *Id.* Plaintiff must allege "(1) the existence of a civil conspiracy ..., (2) the defendant's participation in the conspiracy, and (3) an overt act by a co-conspirator within the forum, subject to the long-arm statute, and in furtherance of the conspiracy." FC Inv. Grp. LC v. IFX Markets, Ltd., 529 F.3d 1087, 1096 (D.C. Cir. 2008) ( citing Kopff v. Battaglia, 425 F.Supp.2d. 76, 81 n. 4 (D.D.C.2006) and Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C.Cir.1991).

## I.  THE FIRST AMENDED COMPLAINT ALLEGES SUFFICIENT FACTS TO ESTABLISH *PRIMA FACIE* CONSPIRACY JURISDICTION OVER LANGER.

In order to defeat Langer's motion, Plaintiff need only allege Langer participated in an unlawful conspiracy in which he knew his co-conspirators would commit overt acts in the District. The FAC more than sustains Plaintiff's burden.

### A. Langer's Participation In A Conspiracy To Interfere With Plaintiff's Employment Agreement And Defame Her Satisfies The District's Long-Arm Statute.

The Amended Complaint alleges sufficient facts to sustain jurisdiction over Langer pursuant to the District's long-arm statute by participating in a conspiracy in which his co-conspirators committed tortious acts here. Plaintiff has alleged Langer, Metskas, Speckhardt, and others agreed to induce SCA to breach Plaintiff's employment agreement. (Dkt. 3 at ¶¶ 6, 35, 39, 69-79). Speckhardt's and Metskas' motives were personal (Metskas wanted Plaintiff's job and Speckhardt feared public revelation that his failure of oversight led to embezzlement of SCA funds). (FAC at ¶¶ 36, 37, 63-68). Langer's motive appears more prosaic; he simply does not care for her, as evidenced by his outrageous public criticism of her. (*E.g.*, Ex. 1).

Langer provided the nominal basis for Plaintiff's termination: Plaintiff's purported "insubordination" and her diverting funds from Langer's organization without SCA Board approval. Speckhardt and Metskas relied on Langer's conflict with Plaintiff to instigate and sustain the events culminating in her firing. Langer then agreed to—and did—publicly defame Plaintiff. The Amended Complaint alleges several acts in furtherance of the conspiracy undertaken in the District, where SCA is headquartered and employed Plaintiff.

Langer asserts Plaintiff has not sufficiently alleged a conspiracy, claiming she relies on "bald" allegations. (Dkt. 31-1 at 5-6). To the contrary, Plaintiff has alleged each element of her claim, including an agreement, an unlawful purpose, and overt acts done in furtherance of the conspiracy. (FAC at ¶¶ 37, 38, 39, 69-72, 168-173).

Furthermore, Langer overstates Plaintiff's burden. At the pleading stage Plaintiff may rely on inference to satisfy the agreement element of her conspiracy claim. Oxbow Carbon &

Minerals LLC v. Union Pac. R.R. Co., 81 F. Supp. 3d 1, 2015 WL 758996 at *6 (D.D.C. 2015) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). And, as noted above, Plaintiff must be given "every favorable inference that may be drawn from the allegations" in the First Amended Complaint. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

The Supreme Court's oft-cited decision in Twombly speaks directly to Plaintiff's burden in successfully pleading a conspiracy:

> [W]e hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

550 U.S. at 556. Plaintiff need not exclude alternative explanations for defendants' conduct, rule out coincidental parallel action, or identify when and where an illicit agreement took place. Oxbow Carbon & Minerals LLC, 81 F. Supp. 3d at 13. Instead, she need only plead sufficient facts to warrant further inquiry through discovery.

### B. Because Langer Knew He Was Exposing Himself To Litigation And That Overt Acts In Furtherance Of The Conspiracy Would Be Committed In The District, Due Process Is Satisfied.

The second jurisdictional requirement is also met. Due process requires "in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Creighton Ltd. v. Government of State of Qatar, 181 F.3d 118 (D.C.Cir.1999) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Put another way "the defendant's conduct and

connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." GTE New Media Servs., 199 F.3d at 1347 (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). *See also* Youming Jin, 335 F. Supp. 2d at 78 (D.D.C. 2004) (same). Where a conspiracy is alleged, "purposeful availment" is satisfied if the foreign defendant knew substantial acts in furtherance of the conspiracy would be performed in the forum state. *Id.* at 79-80.

Langer certainly knew overt acts would be perpetrated in the District. He was chairman of an SCA member organization.[1] He knew SCA is headquartered in the District and that Plaintiff, as SCA's Executive Director, was employed here. These allegations, which the Court must accept as true, state a *prima facie* basis for its exercise of personal jurisdiction over Langer.

In addition, Langer knew his statements exposed him to being named in a lawsuit. In one of his serial bizarre, didactic emails he suggests Plaintiff "waive any claims" she would have if the SCA Board publicized its reasons for terminating her. (Ex. 1 at 4).[2] Responding to an SCA donor who protested SCA "impulsive[ly] firing" for Plaintiff "secret reasons," (Ex. 2 at 4), Langer states "[a]s an attorney and businessman I would never, ever talk about a labor

---

[1] Langer claims he "no longer participates with the Humanist Chaplaincy at Harvard and has ended his involvement with any secular groups in the District of Columbia." (Dkt. 31-1 at 7). This is of no consequence. The Court's jurisdiction cannot be "undone" by subsequent acts.

[2] Plaintiff's complaint was not that the Board did not publicly announce its reasons for terminating her; it was that the Board never disclosed **even to Plaintiff** why she was terminated, then publicly implied she had committed some unforgivable act requiring immediate action. (FAC at ¶¶ 89, 80-95). *See* Ex. 2 at 4 (referring to donations lost due to Plaintiff's "impulsive firing, a donor asks: "What crime did Edwina commit that was so vile that it was worth losing the largest single gift ever to SCA?").

matter with anyone unless I was legally required to do so…. Anyone making a different decision would, if I may be candid, be acting like a fool…." (*Id.* at 2). As alleged in the FAC, that is precisely what Langer did. (FAC at ¶¶ 68-79). In another email Langer declines to reveal the reasons for an unrelated firing because he does not "want to expose myself like I did re the SCA situation." (Ex. 3).[3]

Langer's own conduct and admissions, together with his knowledge that SCA would terminate Plaintiff in the District, indicate he "reasonably [should have] anticipate[d] being haled into [this] court."

## II.  AT A MINIMUM, PLAINTIFF IS ENTITLED TO JURISDICTIONAL DISCOVERY REGARDING LANGER'S PARTICIPATION IN THE CONSPIRACY.

Alternatively, in order to obtain jurisdictional discovery against Langer, Plaintiff need only allege (1) the existence of the conspiracy, (2) Langer's participation, and (3) an injury-causing act in furtherance of the conspiracy within the District. Edmond v. U.S. Postal Service General Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991). *See also* Youming Jin v. Ministry of State Sec., 335 F. Supp. 2d 72, 83-84 (D.D.C. 2004) (abuse of discretion to deny jurisdictional discovery when the Edmond test is met).

"This Circuit's standard for permitting jurisdictional discovery is quite liberal…" Diamond Chem. Co. v. Atofina Chemicals, Inc., 268 F. Supp. 2d 1, 15 (D.D.C. 2003). "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by

---

[3] Subsequent paragraphs in the referenced email make clear the "SCA situation" refers to Plaintiff's termination. (Ex. 3).

withholding information on its contacts with the forum." El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996), *abrogated on other grnds. by* Samantar v. Yousuf, 560 U.S. 305 (2010). Plaintiff need only have a "good faith belief that such discovery will enable it to show that the court has personal jurisdiction … and make a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." NBC-USA Housing, Inc. Twenty-Six v. Donovan, 741 F.Supp.2d (D.D.C. 2010) (citations, quotations omitted).

Plaintiff has alleged and produced communications demonstrating Langer's intense animosity towards her and his cooperation with his co-conspirators. His unfounded allegation that Plaintiff undermined one of his organization's projects formed the basis of Metskas and Speckhardt's efforts to cause Plaintiff's termination. His emails indicate he voluntarily took on the burden of publicly justifying Plaintiff's termination. (Ex. 1 at 2, 3 (Langer's "decision to volunteer as a peacemaker in the SCA situation")).

Plaintiff has a reasonable basis to expect discovery into communications between and among Langer, Metskas, and Speckhardt will generate dispositive jurisdictional facts; *i.e.*, an express or implied agreement to cause Plaintiff's termination. Furthermore, Langer repeatedly broadcasts his disparaging emails to numerous individuals, including SCA Board Members. (*E.g.*, Ex. 1 at 1). Discovery into communications between and among Langer and SCA's Board members and officers is likely to provide additional evidence of Langer's participation in the conspiracy. In accordance with this Circuit's precedent, Plaintiff ought to be permitted jurisdictional discovery as to Langer.

## CONCLUSION

For all of the foregoing reasons, Langer's motion should be denied. In the alternative, the Court should defer ruling on the motion until after Plaintiff has had the opportunity to engage in jurisdictional discovery.[4]

November 16, 2015                    Respectfully submitted

                                     _____
                                     Steven Gremminger (DC 353821)
                                     Steven M. Oster (DC 376030)
                                     GREMMINGER LAW FIRM
                                     5335 Wisconsin Ave., N.W., Ste. 440
                                     Washington, D.C. 20015
                                     (202) 885-5526
                                     steve@gremmingerlawfirm.com

                                     Robert W. Johnson II (DC 945170)
                                     JOHNSON, ROGERS & CLIFTON LLP
                                     401 Ninth Street, NW, Suite 640
                                     Washington, DC 20004-2163
                                     (202) 253-2112
                                     robinjohnson@jrcdc.us

                                     *Attorneys for Plaintiff  Edwina C. Rogers*

---

[4] As an alternative basis for dismissal of Counts III (Intentional Interference with Contract) and IV (Civil Conspiracy), Langer adopts the Rules 12(b)(6) and 56 motions previously filed on behalf of Defendants SCA, Metskas, and Speckhardt. (Dkt. 31-1 at 7 (incorporating Dkts. 7, 8). In response, Plaintiff incorporates her oppositions to these motions. (Dkts. 20, 24).

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing Opposition to Greg R. Langer's Motion to Dismiss using the Court's CM/ECF system and thereby served all counsel of record.

November 16, 2015                                    **/s/ Steven M. Oster**
                                                     Steven M. Oster